WILLIAM W. GOODELL, plaintiff in error, *v.* THE PEOPLE, defendants in error.

The statutory provision (2 *R. S.,* 288), which declares it a misdemeanor for an attorney, counselor or solicitor, to buy any bond, bill, promissory note, bill of exchange, &c., with the intent, and for the purpose of bringing any suit thereon, is not applicable to a demand purchased with the intent of prosecuting it in a justice's court.

THIS case came up on a writ of error to the Court of Sessions of Madison county. The plaintiff in error had been indicted in that court for a violation of the provisions of the statute (2 *R..S.,* 288), which forbids the buying of demands for the purpose of prosecution. He pleaded that he received the note, &c., without any intent to prosecute it in a court of record. The public prosecutor demurred, because it did not deny an intent of prosecuting it in a justice's court. Judgment on the demurrer was given in favor of the People, and Goodell sued out a writ of error.

*M. J. Shoecraft,* for the plaintiff in error.

*A. N. Sheldon* (District Attorney), for the People.

Goodell *v.* The People.

CAMPBELL, J. The simple question is this: is it an indictable offense for an attorney of·this court to buy a promissory note, with the purpose or intent to prosecute the same in a justice's court?

The present language of the statute is this (*p.* 478, § 58, 3 *R. S., 5th ed.*): "No attorney, counselor or solicitor, shall, directly or indirectly, buy, or be in any manner interested in buying any bond, bill, promissory note, bill of exchange, book debt, or other thing in action, *with* the *intent* and for the *purpose* of bringing any suit thereon."

· The statute of 1818, which was entitled "An act to *prevent abuses* in the *practice* of the law, and to regulate *costs* in certain cases," decided "that no ·attorney or counselor-at-law of any court of record in this State, shall, directly or indirectly, buy, &c., any promissory note." Under this statute, it was said in *People* v. *Walbridge* (6 *Cowen R.,* 516), "the act of buying constitutes the offense." That the law of 1818, and previous laws on this subject, were intended to reach a class of men who make a practice, either directly or indirectly, of buying small notes of fifty dollars and upwards, and then prosecuting them in courts of record, in the old common pleas, or in the Supreme Court, and make the defendants pay large bills of costs, even when the suit was undefended, there can be, I think, no doubt. Hence, it was entitled an act to prevent abuses, and to regulate *costs.* The law was aimed at attorneys in courts of record, who were the parties receiving the costs, and who thus often oppressed debtors by. unexpected and unnecessary prosecutions. But the statute of 1818 did not reach another court and another class of officers who were also charged with oppression, namely : the courts of justices of the peace and the constables who serve process issuing out of such courts. Accordingly, in 1820, another statute was passed, and closely following that of 1818, found now in 3 *R. S.,* 454, *5th ed.,* § 161. That statute declares that "no justice of the peace or constable shall, directly or indirectly, buy, or be interested in buying any bond, note, or other demand or cause of action, for the purpose of *commencing any suit thereon before*

Goodell *v*. The People.

*a justice, &c.*;" also, as in case of attorneys and counselors, making it a misdemeanor. These two statutes covered the whole ground of abuse and costs in what may be called common law courts. It placed the restraining hand on the attorneys and counselors who were entitled to costs in courts of record, and upon justices and the constables who were entitled to costs in courts of justices of the peace, and solicitors in chancery were afterward added. The statute, in relation to justices' courts, was passed in 1820, after the statute of 1818, relating to attorneys and counselors, and adopts the language of the act of 1818, and meets and provides for correction of abuses that may have crept into justices' courts. Reading the two acts together, and looking at the title of the act of 1818, there can be no doubt, I think, that that act and the subsequent alterations and provisions, were intended to prevent abuses practiced by attorneys in the courts of record. The attorney may not buy a note, with the intent and for the purpose of bringing any suit thereon. Of bringing a suit where? Why, clearly in some court of record, where he recovers costs. So the justice and the constable may not buy for the purpose of prosecuting in a court where they are entitled to fees and costs. The act of the defendant charged as an offense, may be within the letter of the law; but, in my judgment, it is not within its spirit. It may be noted, too, that there is no such officer as attorney or counselor-at-law known in the courts of justices of the peace; the statutes nowhere provide for such. I think the defendant's plea was good, and the demurrer should be overruled and the judgment of the Court of Sessions reversed.

PARKER, J. In this case, the judgment of the Madison County Court of Sessions, upon a demurrer interposed by the People to the special plea of the defendant, is brought here by writ of error for review; and the question presented is, whether the statute which forbids the buying of promissory notes, &c., by attorneys, counselors and solicitors, with intent to bring suits thereon, was intended to apply to and include suits in justices' courts.

Goodell *v.* The People.

The defendant, being an attorney and counselor of this court, was indicted for a violation of that statute. He pleaded, in substance, that he received the note in payment for property sold, without any intent to bring any suit thereon in any court of record. The district attorney, on behalf of the People, demurred to the plea, because it does not deny that the note was received with intent to prosecute the same in a court of a justice of the peace. The indictment alleged that the defendant bought the note "with the intent and for the purpose of bringing a suit thereon," using the language of the statute. If that language in the statute was intended to include suits in justices' courts, the plea is not broad enough, and the demurrer is well taken; but if suits in justices' courts are not within the prohibition, the plea is good in substance, and the demurrer should have been overruled, and judgment thereon given for the defendant.

I am of the opinion that the statute in question does not reach this case; that the prohibition extends only to the buying of notes, &c., "with the intent and for the purpose of bringing suits thereon" in courts of record.

In the first place, the article of the Revised Statutes, in which the prohibition is found, is entitled, "Of the officers of courts of record, their duties, privileges and liabilities" (2 *R. S.*, 288, 1*st ed.*); and then the whole scope of the article is in conformity with the title, and contemplates merely the duties, privileges and liabilities of officers of courts of record with reference to proceedings in such courts. This, I think, will be evident to any one reading the several provisions of the article. It begins with declaring that "all attorneys, solicitors and counselors shall be regulated by the rules and orders of the courts in which they shall respectively practice." It goes on to provide for the admission of attorneys, &c.; proceedings on the death of an attorney or solicitor; prescribes penalties for deceit, willful delay, extortion, and lending his name, by an attorney or solicitor, in the prosecution of suits. So far, there will be no dispute but that the acts prescribed and inhibited, and the suits mentioned, are acts and suits in courts of

record. Then comes the section containing the prohibition in question; it is as follows: "§ 71. No attorney, counselor or solicitor shall, directly or indirectly, buy, or be in any manner interested in buying, any bond, bill, promissory note, bill of exchange, book debt, or other thing in action, with intent, or for the purpose, of bringing any suit thereon."

By the seventy-third section the doing of the act above prohibited is declared a misdemeanor, and the penalty, fine and imprisonment, and removal from office in the several courts in which the guilty party is licensed. Subsequent sections provide for setting up as a defense "in any suit" brought on a note, &c., bought in violation of this statute, the fact that it was so bought, and for compelling the plaintiff to testify touching that fact. Section seventy-seven authorizes the defendant to apply to a judge of the court in which the suit is pending, or to some officer authorized to exercise the powers of a justice of the Supreme Court at Chambers, for an order that the plaintiff attend the trial of the cause to be examined. Section seventy-nine provides that such order shall be served on the plaintiff or his attorney at the time of serving a plea tendering an issue in the cause. Section eighty provides that if the plaintiff fails to attend the trial, he shall be nonsuited, unless his failure is accounted for to the satisfaction of the court, in which case the court may postpone the trial until its next sitting.

It is plain that none of these provisions are applicable to a suit in a justice's court, and yet they are all made applicable to *any suit* brought on a demand procured in violation of the provisions of this article. It seems to me to follow that suits in justices' courts are not contemplated by the article, nor included in its prohibition; and consequently, that a note bought with intent to bring a suit upon it in a justice's court, is not forbidden by it.

The fact that there is a similar prohibition in one of the articles of the Revised Statutes, relating to justices' courts, by which justices and constables, the only officers of those courts, are prohibited from buying notes, &c., for the purpose of com-

Goodell *v.* The People.

mencing any suit thereon before a justice of the peace, strengthens the position that the section under consideration was not intended to apply to suits in justices' courts. (2 *R. S.*, 267, § 235, 1*st ed.*)

Again, if we consider the object of the statute, I think we shall be led to the same conclusion. The Chancellor, in *Baldwin* v. *Latson* (2 *Barb. Ch. R.*, 308), states the object to be " to prevent attorneys and solicitors from purchasing debts or other things in action for the purpose of obtaining costs by a prosecution thereof." So Mr. Justice STRONG, in *Mann* v. *Fairchild* (14 *Barb. R.*, 554), says : " The main object of the statute in question was to prevent litigation by prohibiting the purchase of choses in action by those whose pecuniary interests might be peculiarly advanced by instituting suits upon them, and who, in consequence of their position, might conduct their suits upon unequal terms." It is evident, I think, that the object of the statute is correctly stated in these two cases. The purchasing of debts by attorneys, with the intent to bring suits upon them in justices' courts, does not seem to me to be within the mischief which the statute was intended to guard against. No costs being allowed to an attorney in a justice's court, he has no object in buying debts to sue in that court, and I can see neither opportunity nor temptation for him to attempt to advance his pecuniary interests by so doing. As he has no temptation to litigate, as a party, in justices' courts, no litigation is induced by his freedom from restraint in that direction ; and I conclude, therefore, that the prohibition of the statute was not intended to restrain him from acts which are not productive of the evils which it was intended to remedy. Upon the whole, I am of the opinion that the judgment of the court below was erroneous, and should be reversed.

Judgment reversed.