## IOWA NAT. BANK OF OTTUMWA v. SHERMAN & BRATAGER.

That the president of a bank is the treasurer and a director and stockholder, and the cashier is a stockholder and the secretary, of a corporation which transfers a note to the bank, according to a daily custom existing between the corporation and the bank, which latter discounts the same without inquiry, and places its proceeds to the credit of the former, against which there is a large overdraft, is ground for the submission to the jury of the question of the bank's character as a bona fide purchaser of the note, where the only evidence of its good faith in the transaction is given by the president and cashier of the bank, although such evidence is uncontroverted.

(Opinion filed April 4, 1905.)

On rehearing. Former opinion disaffirmed in part and judgment reversed. For former opinion see 17 S. D. 396, 97 N. W. 12.

FULLER, J. The facts in this case, now before us on rehearing, are stated in 17 S. D. 396, 97 N. W. 12, where it ap-

pears that the action is upon a promissory note executed by appellants to the Janney Manufacturing Company, and transferred to the respondent bank, before maturity, in the due course of business.    As a complete defense appellants pleaded the breach of an express warranty, failure of consideration, and fraudulent representations as to certain farm machinery in settlement for which the note was executed, and the last two paragraphs of the answer are as follows:    "That the said Janney Manufacturing Company, at the time it entered into said contract with these defendants, knew that said machines were defective, and not suited for the purpose for which they were manufactured, but wrongfully and fraudulently and for the purpose of defrauding these defendants did make such representations and statements, and thereby induced these defendants to execute to it their note as aforesaid; that said plaintiff had full knowledge at all times that said note had been obtained from these defendants by fraud and without consideration therefor; that the alleged consideration therefor had wholly failed; and that, if the plaintiff has said note it has the same only as the agent of the said Janney Manufacturing Company, and as parties to said fraudulent transaction, and for the further purpose of harrassing these defendants and enable the said Janney Manufacturing Company to better carry out the purpose of its fraudulent design."    Upon the theory that respondent is a bona fide purchaser of the note for value, and before maturity, as shown by the uncontroverted testimony of its president and cashier, the trial court directed a verdict in its favor for the full amount claimed.    In appellants' former brief there is a cursory statement to the effect that the case should have gone to the jury on account of the interest of such

witnesses in the result of the action, but the point was not argued by counsel, and we failed to consider the same as thoroughly as some other questions more confidently relied upon for a reversal.    Now, all the testimony relative to this vital issue of bona fides was adduced by interested bank officials, and the fact that its cashier was a stockholder and secretary of the Janney Manufacturing Company, and its president the manager of the fiscal affairs of such corporation, acting in the capacity of treasurer, director, and stockholder, when considered with the other circumstances in the case, might be sufficient to justify the jury in discrediting their testimony on the ground of interest, and in that event the evidence offered by appellants and rejected by the court would constitute a complete defense.    According to the daily custom of these closely related corporations, this note, duly indorsed, was presented to the teller of the bank, who discounted the same without any inquiry, and placed the proceeds thereof to the credit of the Janney Manufacturing Company, against which at that time there was an overdraft of nearly $15,000.    Respondent's ownership of the note and the obligation of the Janney Manufacturing Company, as an unrestricted indorser, creates a mutual interest, which in case of failure to collect would result in material loss either to the bank, of which the witnesses are managing officers, or to the manufacturing company, in which they are interested, not only as its treasurer, secretary, and directors, but as holders of two-fifths of all its capital stock. The case of McGill v. Young, 16 S. D. 360, 92 N. W. 1066, is an authority to the point that the jury may disregard, as not entitled to credit, the uncontroverted testimony of interested witnesses, where the circumstances are such as to reasonably al-

low the inference of suspicion; and in support of the proposition we say: "In Honegger v. Wettstein, 94 N. Y. 253, the testimony was not directly contradicted, and the court therefore refused to submit the question of the credibility of the witness to the jury.   On appeal this ruling was assigned as error, and in disposing of it the Court of Appeals says:   'We also think that the court erred in refusing to submit to the jury the question made as to the credibility of the witness Ochninger. Although not contradicted, he was an interested party, and had a direct interest in increasing the fund in the hands of the receiver and preventing its payment to the plaintiff.'   The same view of the law was taken by the court in McNulty v. Hurd, 86 N. Y. 547.   The case of Joy v. Diefendorf, 28 N. E. 602, is analogous to the case at bar.   The principle defense relied on in that case to defeat the action was that the plaintiff was not a bona fide holder of the note.   The court, in its opinion, says:   'The evidence given on the part of the defendant was sufficient to warrant the conclusion that the note had been obtained from him through fraud practiced upon him by Henderson and Van Valkenburgh, and the burden was thus cast upon the plaintiff to show that he was a bona fide purchaser. Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, and cases cited.   This burden the plaintiff met by his own evidence as to the circumstances attending the purchase, and his knowledge of the party from whom he obtained it, and the credibility of his testimony was for the jury to determine.   That question was decided in Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676.   The case was upon a note obtained by the same parties from this defendant, and grew out of the same transaction as the note in suit, and was transferred to the Bank

of Henderson.   The question of the good faith of the bank's purchase depended entirely upon the evidence of its cashier, and it was held that his relation to the bank and his interest in the transaction brought him within the rule that the credibility of a party or an interested witness is a question for the jury to determine.' "   To the same effect are the following cases: Blount v. Medbery, 16 S. D. 562, 94 N. W. 428; Seehorn v. Bank, 148 Mo. 256, 49 S. W. 886; Dysart v. Terrell, 70 S. W. 986.   The relation of these officers to the respective corporations interested in the collection of the note, the proceeds of which were applied in partial satisfaction of an existing indebtedness, and their manner of doing business, as shown by the record, suggests the likelihood of knowledge on the part of the bank that the makers of the note had a valid defense, and the credibility of such witnesses and their testimony ought to have been determined by the jury.

Disaffirming our former opinion in this particular only, the judgment appealed from is reversed, and a new trial granted.